**O**

# United States District Court
# Central District of California

| | |
|---|---|
| GENEVIEVE DURONSLET,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES; and DOES 1–10, inclusive,<br><br>Defendants. | Case № 2:16-cv-08933-ODW(PLAx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [7]** |

## I. INTRODUCTION

Plaintiff Genevieve Duronslet is a transgender minor who is biologically male but who identifies as female. (Compl. ¶¶ 1, 13, ECF No. 1-2.) In October 2015, the Los Angeles County Department of Child and Family Services ("DCFS") detained Plaintiff in connection with a juvenile dependency case. (*Id.* ¶ 13.) During her detention, DCFS personnel allegedly forced Plaintiff to use male restroom facilities and to sleep on the "boy's side" of the DCFS Welcome Center, even though they "knew or should have known" that Plaintiff identified as female. (*Id.* ¶¶ 9, 10, 13.) Plaintiff alleges that DCFS staff were acting pursuant to an official policy or practice that treats transgender detainees according to their birth-assigned gender rather than their gender identity. (*See id.* ¶¶ 24–25.) Plaintiff subsequently filed suit against Defendant County of Los Angeles, alleging: (1) violation of the California Unruh

Civil Rights Act; (2) intentional infliction of emotional distress; (3) violation of the federal Due Process Clause; and (4) violation of the federal Equal Protection Clause. (ECF No. 1-2.) The County has moved to dismiss all of Plaintiff's claims. (ECF No. 7.) For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the County's Motion.[1]

## II. LEGAL STANDARD

A court may dismiss a complaint for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. Fed. R. Civ. P. 12(b)(6); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The Court must grant the plaintiff leave to amend if there is any possibility that amendment could cure the deficiencies, even if the plaintiff fails to request such leave. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

## III. DISCUSSION

**A. Unruh Civil Rights Act**

The County argues that there are insufficient facts to infer that DCFS personnel

---

[1] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

2

intentionally discriminated against Plaintiff. Because Plaintiff is required to plausibly allege intentional discrimination to state a claim under the Unruh Civil Rights Act, the County argues, Plaintiff's claim must be dismissed. (Mot. at 3–4, ECF No. 7.) The Court agrees.

The Unruh Civil Rights Act provides as follows:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b); *see also id.* § 52(a) ("Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 . . . is liable for each and every offense . . . ."). The Act defines "sex" discrimination to include discrimination based on gender identity. *Id.* § 51(e)(5). "[A] plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination." *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1175 (1991). Facts showing that a facially neutral policy has a disparate impact on a protected class "may be probative of intentional discrimination," but is alone insufficient to establish liability. *Id.*

In federal court, a plaintiff cannot plead discriminatory intent merely by making a conclusory allegation to that effect. *Iqbal*, 556 U.S. at 686. Rather, the complaint must include some factual context that gives rise to a plausible inference of discriminatory intent. *See id.* at 683, 686; *see also Wilkins-Jones v. Cty. of Alameda*, 859 F. Supp. 2d 1039, 1052 (N.D. Cal. 2012); *Earll v. eBay, Inc.*, No. 5:11-CV-00262-JF HRL, 2011 WL 3955485, at *3 (N.D. Cal. Sept. 7, 2011); *C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1123, 1155 (E.D. Cal. 2009); *K.S. v. Fremont Unified Sch. Dist.*, No. C 06-07218 SI, 2007 WL 4287522, at *3 (N.D. Cal. Dec. 6, 2007).

Plaintiff has not met that standard here. To show that the County intended to discriminate against her based on her transgender status, Plaintiff must plausibly

allege that the County knew of her transgender status. *See Wilkins-Jones*, 859 F. Supp. 2d at 1052 (discriminatory intent not plausibly established where the plaintiff failed to allege that her "disabilities warranting such additional accommodations were obvious and should have been known by [the defendant]"). While Plaintiff makes the conclusory assertion that the County "knew or should have known" that she was transgender, there are insufficient underlying facts showing how or why the County knew or should have known this. The only allegation potentially supporting such an inference is Plaintiff's repeated insistence that she was "forced" to use male facilities, which suggests that she first requested to use female facilities. (Compl. ¶ 13.) However, this does not necessarily mean that she informed them of her transgender status or that they otherwise must have drawn the conclusion that she is transgender. Thus, the Court dismisses this claim with leave to amend to cure this deficiency.

**B.     Intentional Infliction of Emotional Distress**

The County contends that Plaintiff has not stated a claim for intentional infliction of emotional distress because: (1) public entities are not subject to common law liability in California; and (2) there are no facts showing that the County acted with the requisite state of mind, that the County's conduct was extreme and outrageous, or that Plaintiff suffered severe emotional distress. (Mot. at 5–7.) The Court addresses each argument in turn.

**1.     Common Law Liability**

The County argues that Plaintiff's common law claim for intentional infliction of emotional distress fails because California public entities are subject to liability only as prescribed by statute. (Mot. at 5.) While the County is technically correct, *see* Cal. Gov't Code § 815(a), its victory is a hollow one. Public employees are still subject to common law claims, *id.* § 820(a), and public entities are statutorily liable for the unlawful acts and omissions of its employees, *id.* § 815.2(a). Thus, the County's argument amounts to little more than a request that Plaintiff amend her complaint to reference Section 815.2(a). While the Court will dismiss the claim on

that basis and grant Plaintiff leave to add such an allegation, the Court does not see how forcing the issue generated any real benefit for the County.

### 2. Merits

The County next argues that its alleged conduct was not "extreme and outrageous" as a matter of law, that Plaintiff has failed to allege intentional or reckless conduct by the County, and that Plaintiff has not suffered "severe emotional distress" as a matter of law. (Mot. at 5–7.)

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citations and internal quotation marks omitted).

#### i. Intentional/Reckless Conduct

To recover under a theory of intentional infliction of emotional distress, "[t]he defendant must have engaged in 'conduct intended to inflict injury or engaged in with the realization that injury will result.'" *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993) (citations omitted). As previously noted, Plaintiff has not plausibly alleged that DCFS personnel knew or should have known that she was transgender. Without this, Plaintiff also cannot plausibly allege that the County intended to cause her emotional distress—or that they acted with reckless disregard for the probability of causing her emotional distress—by forcing her to use male restroom and sleeping facilities. The Court therefore dismisses this claim but grants leave to amend to cure this deficiency.

#### ii. Extreme and Outrageous Conduct

"A defendant's conduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes*, 46 Cal. 4th at 1050–51 (citations and some internal quotation marks omitted). "Behavior may be

considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." *Molko v. Holy Spirit Assn.*, 46 Cal. 3d 1092, 1122 (1988). However, outrageous conduct does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Hughes*, 46 Cal. 4th at 1051. Whether conduct is "extreme and outrageous" is a question of fact for a jury to resolve unless reasonable minds could not differ on the issue. *Molko*, 46 Cal. 3d at 1123.

Plaintiff's current allegations are insufficient to show that the County's conduct was extreme and outrageous. First, as previously noted, Plaintiff has not plausibly alleged that the County knew or should have known of Plaintiff's transgender status. Without this, all that Plaintiff has plausibly alleged is that the County required a biologically male minor to use male restroom and sleeping facilities. This in and of itself is not "extreme and outrageous." Second, as the County points out, it is unclear how many times DCFS personnel required Plaintiff to use the male facilities, whether they did so despite observing a negative reaction from Plaintiff, or what other facts may exist demonstrating the outrageousness of their conduct. These facts might make the difference between culpable conduct and conduct that, while unfair and inconsiderate, does not "exceed all bounds of that usually tolerated in a civilized community." *Hughes*, 46 Cal. 4th at 1050–51. The Court will therefore dismiss this claim with leave to amend to provide more facts in support of this claim.

However, to provide further guidance to the parties on this element, the Court also addresses the County's remaining arguments. The County cites *Hughes* for the proposition that forcing minors to use restroom and sleeping facilities that do not comport with their gender identity is not extreme and outrageous as a matter of law. The Court fails to see any similarity between this case and *Hughes*. In *Hughes*, the court held that sexual comments made to the plaintiff by her ex-husband during two

encounters did not constitute extreme and outrageous conduct. 46 Cal. 4th at 1040, 1051.[2] The County suggests that its alleged conduct is less egregious than the conduct in *Hughes*, but it does not identify any meaningful similarities between the two situations.[3] Indeed, if anything, the conduct here is *more* egregious than in *Hughes* due to the existence of an adult-minor caregiver relationship between Plaintiff and the County, and the susceptibility of transgender teens in foster care to emotional distress. *See Molko*, 46 Cal. 3d at 1122; *cf. Bundren v. Superior Court*, 145 Cal. App. 3d 784, 792 (1983) (existence of a hospital-patient relationship was a relevant consideration in determining whether the defendant's conduct is extreme and outrageous); *Cross v. Bonded Adjustment Bureau*, 48 Cal. App. 4th 266, 283 (1996) (attorney-client fiduciary relationship was a relevant consideration); Lambda Legal Amicus Br. at 19–22 (noting recognition by various government welfare agencies of the emotional and physical vulnerability of LGBTQ minors in foster care), ECF No. 17. Given this, it is far from certain that the County's conduct would not be extreme and outrageous as a matter of law even if there was only a single instance where the DCFS knowingly forced Plaintiff to use facilities that did not comport with her gender identity.

### iii. Severe Emotional Distress

"With respect to the requirement that the plaintiff show severe emotional distress, this court has set a high bar. Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." *Hughes*, 46 Cal. 4th at 1051 (citations, brackets, and internal quotation marks omitted); *see also id.* (allegation that the plaintiff suffered "discomfort, worry, anxiety, upset stomach, concern, and agitation" insufficient). Plaintiff also fails to satisfy this element. As the County notes, Plaintiff alleges only that she suffered "shock, embarrassment, and emotional

---

[2] The County erroneously argues states this conduct occurred over a five-year period.
[3] The County does argue that the conduct in *Hughes* occurred over a five-year period whereas the conduct at issue here might have only occurred once. But because the conduct in *Hughes* did not in fact occur over a five-year period (*see supra* note 2), the County's comparison fails.

distress" as a result of the County's conduct. (Compl. ¶ 19.) Under *Hughes*, this is insufficient. While the Court is cognizant of the severe emotional distress that a transgender teen could suffer by being forced to use facilities that do not comport with their gender identity (*see* Lambda Legal Amicus Br. at 22–25, ECF No. 17), there are simply insufficient allegations to conclude that such is the case here. The Court therefore dismisses the claim on this basis but grants leave to cure this deficiency.

## C. Due Process

The County argues that there are insufficient facts to establish that the County has a policy or practice of treating transgender detainees according to their birth-assigned gender rather than their gender identity. (Mot. at 7–9.) The Court disagrees.

Federal law, unlike state law, does not hold a public entity vicariously liable for constitutional violations committed by its employees. 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Plaintiff alleges, upon information and belief, "that the actions of Defendants . . . w[ere] the result of policies and procedures as well as customs and practices on the part of the [County] which precludes detainees and persons under the supervision of the DCFS to be treated [according to] their assigned sex at birth rather than [their] gender identity, regardless of the individual circumstances and the fact that said actions are known to cause extreme emotional distress to persons in the position of Plaintiff." (Compl. ¶ 25.) The Court finds this allegation sufficient at the pleading stage. First, assuming that the DCFS was aware of Plaintiff's transgender status, its treatment of Plaintiff itself gives rise to an inference (albeit a weak one) that the

County has such a policy or practice, and that DCFS personnel were acting pursuant to that policy or practice.[4] Second, courts have permitted plaintiffs to plead ultimate facts solely on information and belief where the underlying evidence is "peculiarly in the defendant's possession and control." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *see also GCIU-Emp'r Ret. Fund v. Quad/Graphics, Inc.*, No. 216-CV-00100-ODW-AFMX, 2016 WL 3027336, at *3 (C.D. Cal. May 26, 2016) (collecting cases). Here, any evidence regarding the policies, customs, and practices of the County certainly falls into the category of evidence that is "peculiarly in [its] possession and control." *Arista Records*, 604 F.3d at 120. The Court thus denies the County's Motion with respect to Plaintiff's Due Process claim.

**D. Equal Protection**

Finally, the County argues that Plaintiff has not alleged sufficient facts showing that DCFS personnel deprived her of equal protection of the law. (Mot. at 9–12.) The County argues that rational basis review applies to discrimination claims against transgender persons, and that Plaintiff's allegations do not establish that a policy of requiring transgender minors to use facilities that align with their birth-assigned gender rather than their gender identity is not rationally related to a legitimate government interest. (*Id.*) Plaintiff and her supporting *amicus* argue that transgender discrimination claims should be evaluated under strict scrutiny or at least intermediate scrutiny, but that in any event Plaintiff pleads sufficient facts to establish that the County's policy would not survive under even rational basis review. (Opp'n at 18–25; Lambda Legal Amicus Br. at 9–18.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,'

---

[4] This does not mean that Plaintiff can ultimately prove a custom or practice based on a single incident (if in fact the DCFS's treatment of Plaintiff did occur only once). *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). But because other evidence regarding the County's policies and practices is peculiarly within the County's possession, the incident alone is sufficient for Plaintiff to move past the pleading stage to discovery. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

1 which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citations omitted). "However, courts must balance this mandate with the 'practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons.'" *Golinski v. U.S. Office of Pers. Mgmt.*, 824 F. Supp. 2d 968, 981 (N.D. Cal. 2012) (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)). "[T]o reconcile the promise of equal protection with the reality of lawmaking, courts apply the most searching constitutional scrutiny to those laws that burden a fundamental right or target a suspect class, such as those based on race, national origin, sex or religion." *Id.* Laws that do not burden a protected class or infringe on a constitutionally protected fundamental right, on the other hand, are subject to rational basis review. *Id.*

In determining the level of scrutiny to apply, the Supreme Court has considered several factors, including: "(1) the history of invidious discrimination against the class burdened by the legislation; (2) whether the characteristics that distinguish the class indicate a typical class member's ability to contribute to society; (3) whether the distinguishing characteristics are 'immutable' or beyond the class members' control; and (4) the political power of the subject class." *Id.* at 983; *see also Windsor v. United States*, 699 F.3d 169, 181 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (collecting cases); *Whitewood v. Wolf*, 992 F. Supp. 2d 410, 427 (M.D. Pa. 2014) (collecting cases); *Varnum v. Brien*, 763 N.W.2d 862, 887 (Iowa 2009) (collecting cases). The Court has also considered trends in Congressional legislation regarding the class at issue. *Frontiero v. Richardson*, 411 U.S. 677, 687 (1973).

The County points to *Holloway v. Arthur Andersen & Co.*, 566 F.2d 659 (1977), for the proposition that transgender discrimination is subject to rational basis review.[5] (Mot. at 9.) In *Holloway*, an employer terminated a transgender employee

---

[5] In its reply, the County does not further reference *Holloway* or even continue arguing that transgender discrimination claims are subject to rational basis review. Nonetheless, because it is an

based on her transgender status, and the employee brought suit against her former employer for "sex" discrimination under Title VII, 42 U.S.C. § 2000e. *Id.* at 661. The Ninth Circuit held that "sex" discrimination only encompassed discrimination based one's anatomical gender, and not discrimination based on a change in one's gender or gender identity. *Id.* at 661–63; *see also id.* at 664 ("Holloway has not claimed to have [been] treated discriminatorily because she is male or female, but rather because she is a transsexual who chose to change her sex. This type of claim is not actionable under Title VII . . . ."). The court also rejected the employee's contention that Congress's exclusion of transgender persons from Title VII protection violated the Equal Protection Clause. *Id.* at 663–64. In doing so, the court held that rational basis review applied to transgender discrimination claims under the Equal Protection Clause because "transsexuals are not necessarily a 'discrete and insular minority'" and because it "ha[d] [not] been established that transsexuality is an 'immutable characteristic determined solely by the accident of birth' like race or national origin." *Id.* (citations omitted).

Over twenty years later, the Ninth Circuit held that *Holloway*'s interpretation of "sex" discrimination had been effectively overruled by the "logic and language" of subsequent Supreme Court cases. *Schwenk v. Hartford*, 204 F.3d 1187, 1201 (9th Cir. 2000). The Supreme Court held in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), that Title VII "barred not just discrimination based on the fact that Hopkins was a woman, but also discrimination based on the fact that she failed 'to act like a woman'—that is, to conform to socially-constructed gender expectations." *Schwenk*, 204 F.3d at 1201–02 (citations omitted). Thus, *Schwenk* held, "sex" discrimination under Title VII included discrimination on the basis of a change in one's gender identity. *Id.* *Schwenk* further noted that Title VII's protections paralleled those of the Gender Motivated Violence Act, and thus "gender"-motivated violence under the

---

open question whether *Holloway* still sets the level of scrutiny for transgender discrimination claims, the Court will address the issue.

latter Act included violence motivated by gender identity. *Id.*

Although *Schwenk* did not directly address *Holloway*'s Equal Protection holding, at least one district court has held that *Schwenk*'s reasoning effectively overruled *Holloway* on that issue as well. *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1119 (N.D. Cal. 2015); *see also Olive v. Harrington*, No. 115CV01276BAMPC, 2016 WL 4899177, at *5 (E.D. Cal. Sept. 14, 2016) (following *Norsworthy* but not discussing *Holloway*); *Marlett v. Harrington*, No. 115CV01382MJSPC, 2015 WL 6123613, at *4 (E.D. Cal. Oct. 16, 2015) (same). The Court ultimately agrees that *Holloway* does not require it to apply rational basis review here. First, the change in judicial approach to federal sex discrimination statutes since *Holloway* requires a fresh examination of the appropriate level of scrutiny for transgender discrimination claims under the Equal Protection Clause. *See Frontiero*, 411 U.S. at 687 (trends in federal discrimination statutes relevant to determining the level of scrutiny under the Equal Protection Clause). Second, *Holloway* itself appeared to accept that future developments in our understanding of transgenderism would require such a reexamination. That is, the court noted that there was substantial uncertainty among experts surrounding the "origin and development of transsexualism," 566 F.2d at 662 n.3, and appeared to limit its factual determinations accordingly, *see id.* at 664 (holding that transgender persons were not "necessarily" a discrete and insular minority and that it "ha[d] [not] been established" that transgenderism was an immutable characteristic). We are now forty years past *Holloway*. Thus, it would not be inconsistent with *Holloway* for this Court to conclude, based on an adequately developed factual record, that our current understanding of transgenderism requires the application of heightened scrutiny.

Beyond this, however, the Court finds it premature to determine either the level of scrutiny to apply or whether the County's policy can withstand such scrutiny. Both are fact-dependent inquiries that are unsuitable for resolution at the pleading stage. *See Golinski*, 824 F. Supp. 2d at 986–1002 (relying extensively on the factual record

in determining the level of scrutiny and applying strict scrutiny); *Latta v. Otter*, 19 F. Supp. 3d 1054, 1065 (D. Idaho) (converting motion to dismiss into motion for summary judgment before addressing level of scrutiny), *aff'd*, 771 F.3d 456 (9th Cir. 2014). Indeed, in making their respective arguments concerning the level of scrutiny and the legitimacy of the government's justifications, both the County and Plaintiff's supporting *amicus* rely heavily on statistics and facts that are neither in the complaint nor supported by documents subject to judicial notice. For now, it is enough for the Court to conclude that Plaintiff has plausibly established that some form of heightened scrutiny might apply to her Equal Protection claim, which shifts the burden to the County to justify its conduct. *United States v. Virginia*, 518 U.S. 515, 533 (1996). And because a plaintiff need not allege facts negating issues on which the defendant carries the burden of proof, *see ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014), Plaintiff need not allege any additional facts to state an Equal Protection claim.

## IV.   CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** the County's Motion. Plaintiff must file an amended complaint within 14 days that cures these deficiencies. The County's response to Plaintiff's amended complaint shall be due 14 days thereafter.

**IT IS SO ORDERED.**

June 20, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**